702 F.Supp. 288 (1988)
NEW BRITAIN GENERAL HOSPITAL HOME HEALTH AGENCY, et al., Plaintiffs,
v.
Otis R. BOWEN, M.D., Secretary of the United States Department of Health and Human Services, et al., Defendants.
Civ. A. No. 88-2804.
United States District Court, District of Columbia.
December 7, 1988.
*289 Barbara Elaine Straub, James C. Pyles, Powers, Pyles & Sutter, Washington, D.C., for plaintiffs.
Robin D. Ball, Asst. U.S. Atty., U.S. Dept. of Justice, Washington, D.C., for defendants.
Sean Connelly, Brand & Lowell, William A. Dombi, Washington, D.C., for defendant amicus curiae Nat. Ass'n for Home Care.

MEMORANDUM ORDER
JOHN H. PRATT, District Judge.
This action involves a challenge to regulations promulgated by the Secretary of Health and Human Services ("the Secretary") at 42 C.F.R. § 421.117, 53 Fed.Reg. 17,936 (May 19, 1988). These regulations require that the processing of reimbursements under the Medicare Act for hospital-based home health agencies ("HHAs") be transferred from the "intermediary" of each HHA to one of ten regional intermediaries. Plaintiffs, hospital-based HHAs[1], have moved for summary judgment, arguing that the adoption of the regulations violated the requirements of 42 U.S.C. §§ 1395h(f) and (e)(4) and the Administrative Procedure Act ("APA"), 5 U.S.C. § 501, et seq. The Secretary opposes plaintiffs' motion and simultaneously moves for summary judgment in his favor. The issues have been extensively briefed. For the reasons that follow we deny plaintiffs' motion for summary judgment and grant defendants' motion.

I. Background

Pursuant to § 1395h(e)(4) of the Medicare Act[2] the Secretary promulgated regulations requiring that the processing of reimbursement claims for hospital-based HHAs be transferred to ten regional intermediaries. In approving the regulations the Secretary determined that, on the basis of six stated criteria[3], the assignments would result in the more effective and efficient administration of the Medicare program. See 53 Fed.Reg. 17,936 (May 19, 1988).
Plaintiffs filed this action, along with a motion for a temporary restraining order ("TRO") and preliminary injunction on September 28, 1988, more than four months *290 after the final regulation was issued.[4] After a hearing on the TRO, plaintiffs' motion for a TRO was denied on the basis that plaintiffs had failed to establish that they would suffer irreparable injury prior to a hearing and decision on the motion for preliminary injunction. New Britain General Hospital Home Health Agency v. Bowen, (September 30, 1988) [1988 WL 104919]. The parties subsequently entered into a stipulation to resolve the case on expedited cross motions for summary judgment instead of proceeding with plaintiffs' preliminary injunction motion.
Plaintiffs argue that the regulations at issue are violative of the Medicare Act and must be enjoined because the Secretary failed to apply the statutory criteria set forth in § 1395h(f)[5] in determining whether the transfer of hospital-based HHAs to regional intermediaries would result in the more effective and efficient administration of the Medicare program. They also maintain that the Secretary's action was arbitrary and capricious and therefore in violation of the Administrative Procedure Act.

II. Discussion

A. Applicability of 42 U.S.C. § 1395h(f)
Plaintiffs' principal challenge to the regulations at issue is that the Secretary was required under 42 U.S.C. § 1395h(e)(4) to apply "standards, criteria, and procedures" promulgated under 42 U.S.C. § 1395h(f) to assess whether transferring the hospital-based HHAs to the regional intermediaries would promote effective and efficient administration of the Medicare program. See Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Brief") at 7. Defendants maintain, to the contrary, that the standards, criteria, and procedures promulgated under § 1395h(f) are inapplicable to evaluating the efficiency and effectiveness of requiring hospital-based HHAs to transfer to regional intermediaries pursuant to § 1395h(e)(4). See Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment ("Defendants' Brief") at 9-24. Defendants further contend that under the plain language of § 1395h(e)(4), the Secretary was free to promulgate different criteria for determining whether assignments of hospital-based HHAs to regional intermediaries promoted effective and efficient administration of the program.
The parties agree that § 1395h(e)(4) directs the Secretary to transfer hospital-based HHAs to regional intermediaries
only if, after applying such criteria relating to administrative efficiency and effectiveness as he shall promulgate, he determines that such assignment would result in the more effective and efficient administration of this subchapter.
42 U.S.C. § 1395h(e)(4).
There is also no dispute that the Secretary is required to determine that a reassignment of hospital-based HHAs to regional intermediaries would result in more efficient and effective administration of the Medicare program prior to approving the transfer. Rather, the issue is a narrow one and involves which set of benchmarks or guidelines the Secretary is required to consider when making the determination on administrative effectiveness and efficiency.
*291 We find plaintiffs' argument that the Secretary is required to consider the criteria promulgated under § 1395h(f) in this instance to be unpersuasive. The plain language of § 1395h(e)(4) dictates that the Secretary is to apply "such criteria relating to administrative efficiency and effectiveness as he shall promulgate." 42 U.S. C. § 1395h(e)(4) (emphasis added).[6] The language and design of the statute as a whole compels the view that § 1395h(f) is inapplicable to agency regulations promulgated under § 1395h(e)(4). The first two subsections of 1395h(e), 1395h(e)(1) and (e)(2) were enacted with § 1395h(f) in 1977. Subsections (e)(1) and (e)(2) authorize the Secretary to assign or reassign providers to designated intermediaries, and both subsections specifically require application of the criteria developed under § 1395h(f).[7]
In 1980, concerned with the lack of consistency by the many intermediaries processing HHAs' claims, Congress addressed this question and amended the Medicare Act by enacting § 1395h(e)(4) to deal specifically with assignments of HHAs to regional intermediaries. See H.R.Rep. No. 1167, 96th Cong., 2d Sess. 368, reprinted in 1980 U.S.Code Cong. & Admin.News 5526, 5731-32. Prior to the enactment of § 1395h(e)(4), the Secretary would have been required to act under §§ 1395h(e)(1) or (e)(2), and necessarily employ the § 1395h(f) criteria, to transfer any HHA to a different intermediary. However, the plain language of § 1395h(e)(4) rendered subsections (e)(1) and (e)(2), and consequently the criteria of § 1395h(f) specified by these subsections, inapplicable. 42 U.S. C. § 1395h(e)(4) ("Notwithstanding ... paragraphs (1), (2), and (3) of this subsection ..."). Had Congress intended, as plaintiffs contend, to require the criteria developed under § 1395h(f) to apply to the transfer of HHAs to regional intermediaries, it could have specifically so stated as it has elsewhere in the statute. Section 1395h(e)(4), unlike other sub-sections of § 1395h(e), makes no reference to the requirements of § 1395h(f). Furthermore, if it were Congress' intent to specify that the § 1395h(f) criteria applies to HHA transfers under § 1395h(e)(4), there would be no reason to repudiate subsections (e)(1) and (e)(2). Indeed, plaintiffs' construction attempts to transpose into § 1395h(e)(4) provisions that Congress has expressly rendered inapplicable.[8]
Our examination of the language and structure of 42 U.S.C. § 1395h(e) and (f) lead us to conclude that the Secretary is not required under § 1395h(e)(4) to apply the criteria promulgated under § 1395h(f).[9]
Plaintiffs' further argument that the new criteria which the Secretary applied to determine effectiveness and efficiency in administration of the program violated notice and comment requirements is entirely *292 premised upon the assumption that § 1395h(f) applies to the regulations promulgated under § 1395h(e)(4). See Plaintiffs' Brief at 21-24. We do not question the proposition that § 1395h(f) expressly requires proposed standards and criteria to be published with an opportunity for the public to comment thereon. This is irrelevant because we have found § 1395h(f) to be inapplicable to regulations promulgated under § 1395h(e)(4). It follows that the notice and comment provision of § 1395h(f) is inapplicable as well.[10]

B. Administrative Procedure Act Claims
Plaintiffs turn next to the substance of the regulations and challenge them as arbitrary and capricious insofar as the agency failed to examine and explain the available relevant data and offer a rational connection between the facts found and the choice made. They assail as implausible the Secretary's conclusion that the transfer of hospital-based HHAs to the regional intermediaries would promote more effective and efficient administration of the Medicare program. Plaintiffs focus their attention almost entirely on the personal preferences of the numerous HHAs which they represent. This is to be expected. At the same time, they ignore or at least underplay the vast responsibilities of the government in the administration of a complex statute. They seem to contend that the Secretary should make a case-by-case analysis of the facts concerning each individual HHA. They argue that the Secretary failed to consider extensive available data, and additionally failed to consider the alternative of allowing hospital-based HHAs to continue using their 53 existing intermediaries and issuing clearer coverage guidelines for the 53 existing intermediaries to use. We shall address each of these matters in turn, but digress for a moment to discuss the standard of review in this case.

Standard of Review
Our standard of review in this case is whether the Secretary's action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A)(1976). Under this standard, our role is necessarily a limited one. We "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The Court is not empowered to substitute its judgment for that of the agency." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971).
Plaintiffs assert that some higher judicial scrutiny afforded cases reviewing an agency's recision of a rule applies to this case. See Plaintiffs' Brief at 24-25, citing Motor Vehicle Mfrs. Ass'n. v. State Farm, 463 U.S. 29, 42, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (stating that where an agency changes its course by rescinding a rule, it is obligated to supply a reasoned analysis beyond that which may be required when the agency acts in the first instance). This argument lacks merit. Because there has not been a recision of any rule in this case,[11] we are not persuaded that the agency *293 is required to supply a more reasoned analysis than that which is required where, as here, the agency addresses a particular problem for the first time.

Arbitrary and Capricious
Having determined that the Secretary's promulgation of criteria different from that developed under § 1395h(f) was proper under the statute, we turn now to review whether the Secretary's adoption of the regulation transferring hospital-based HHAs to the regional intermediaries on the basis of the stated criteria was arbitrary and capricious. It has long been settled that final agency decisions, such as the one before us, are entitled to "a presumption of regularity," National Treasury Employees Union v. Horner, 854 F.2d 490, 498 (D.C.Cir.1988), and must be affirmed if the Secretary has articulated a "rational connection between the facts found and the choice made." FORMULA v. Heckler, 779 F.2d 743, 760 (D.C.Cir.1985), citing Burlington Truck Lines v. United States, 371 U.S. 156, 168, 83 S.Ct. 239, 245-246, 9 L.Ed. 2d 207 (1962). Applying these guidelines, we conclude that the Secretary, in fact, provided a reasoned explanation for his adoption of the final rule.
Plaintiffs assert that the basis and purpose statement accompanying the final rule contains no explanation of the relevant factual findings or evidence. See Plaintiffs' Brief at 26-31; Plaintiffs' Opposition at 11-17. We note that under the APA, the Secretary was required to provide "a concise general statement of basis and purpose," 5 U.S.C. § 553(b)(1982), to enable a reviewing court to determine the "major issues of policy [that] were ventilated ... and why the agency reacted to them as it did." Automotive Parts & Accessories Ass'n. v. Boyd, 407 F.2d 330, 338 (D.C.Cir. 1968).
The challenged final rule was issued on May 19, 1988. It sets forth a detailed discussion of the six pertinent criteria and responses to comments received as a result of the previous notice of the proposed rule. See 53 Fed.Reg. 17,936-43; see also 52 Fed.Reg. 2424-30 (1987). We believe the rule reflects a careful and diligent consideration of the numerous comments received by the agency.[12]See 5 U.S.C. § 553(c) (1982) (agency's statement of basis and purpose should include "consideration of the relevant matter presented"); 1 K. Davis, Administrative Law Treatise § 6:12, at 505-06 (1978) (agency's statement of basis and purpose should include responses to important comments). For example, contrary to plaintiffs' contention that the Secretary failed to consider available evidence regarding the regional intermediaries' previous performance in processing claims, Plaintiffs' Opposition at 12-15, the final rule observed that eight of the ten intermediaries were meeting the congressionally set standard for timely claim processing, that one was very close to meeting the standard, and that the last was experiencing problems unrelated to the absorption of HHA claims and such problems were in the process of being corrected.[13]See 53 Fed. *294 Reg. at 17,941. Furthermore, the rule stated the Secretary's intention to solicit, review, and implement plans for each intermediary to hire and train additional staff to process home health claims timely and correctly without disruption of service to providers. Id.
It is plaintiffs' position that bifurcating coverage and reimbursement functions between two intermediaries, as required under the challenged regulation, will result in more costly and less efficient administration of the program; that such bifurcation has the effect of increasing the number of intermediaries each hospital-based HHA must use, without reducing the number of intermediaries serving all HHAs; and that reducing the number of intermediaries making coverage determinations will not promote effectiveness or efficiency in the absence of the clarification of coverage guidelines. See Plaintiffs' Brief at 39-43.
The Secretary responded to concerns involving the bifurcation of coverage and reimbursement functions[14] between two intermediaries by noting that each intermediary would be assigned "separate, clearly identifiable areas," 53 Fed.Reg. 17,940, and that procedures were being established to ensure the timely coordination of data exchange to enable each intermediary to perform its designated function. 53 Fed.Reg. at 17,941. The Secretary further found that regionalizing hospital-based HHAs would reduce administrative costs from economies of scale in bill processing and "from having to modify fewer bill processing systems when changes in the home health programs require modifications to software programs." 53 Fed.Reg. at 17,939.[15] Finally, the Secretary argues that whatever additional steps may be desirable regarding clarification of guidelines, administering such guidelines with respect to 10 rather than 53 intermediaries will better promote uniformity and consistency.[16] We find this to be entirely reasonable.[17]
Finally, plaintiffs argue that implementation of the challenged regulations interferes with the ability of hospital-based HHAs to request an alternative intermediary, which under current regulations must be requested at least 120 days before the end of an HHA's fiscal year. See 42 C.F.R. § 421.106(a)(1). Plaintiffs note that HHAs receive 60 days notice of their transfer date under the challenged regulations. See 42 C.F.R. § 421.117(f). Plaintiffs, however, have known since the final rule was issued on May 19, 1988, well over 120 days before the first transfers were to occur on October *295 1, 1988, that they were required to transfer to a regional intermediary.[18]See 53 Fed.Reg. at 17,945. We, therefore, conclude that the challenged regulations did not unreasonably interfere with hospital-based HHAs' ability to request transfers to new intermediaries.
The final rule summarizes the Secretary's factual findings by concluding, in pertinent part that:
[b]ased on our experience with freestanding HHAs, we believe that uniform interpretation of Medicare rules, better control of administrative costs, ease of communication with HHAs, data collection and HCFA monitoring of intermediary's performance will be enhanced by virtue of reducing the number of intermediaries processing provider-based home health bills from 53 to 10. For example, it is more efficient and less costly to work with or issue instructions (or both) to 10 intermediaries than 53. We are better able to monitor performance and collect data from 10 rather than 53 intermediaries to assure there is more uniform interpretation of the Medicare rules.
53 Red.Reg. at 17,939.
After careful consideration, we cannot conclude that the Secretary's decision was irrational in any way. Rather, we find that the Secretary carefully evaluated the record before him in the decision making process and adequately explained a "rational connection between the facts found and the choice made." Burlington Truck Lines v. United States, 371 U.S. 156, 168, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962). The Secretary's explanation that regionalization would produce more effective and efficient administration of the Medicare program reflects an exercise of judgment that we are unable to conclude is arbitrary and capricious.
In summary, having evaluated all of plaintiffs' arguments, we hold that the Secretary's approval of the regulations contravened neither § 1395h(f) of the Medicare Act nor the Administrative Procedure Act.
An order consistent with the foregoing has been entered this day.
NOTES
[1] These are also known as "provider-based HHAs" and are to be distinguished from "free-standing HHAs" which were transferred to ten regional intermediaries as a result of the 1984 amendment by Congress to Section 1395h(e)(4). Transfer of 3000 free-standing HHAs was completed by September 1, 1987. See 53 Fed.Reg. 17,940, col. 3 (May 19, 1988). Some 80% of the volume of home health claims are generated by freestanding HHAs.
[2] That provision reads in relevant part:

[n]otwithstanding subsections (a) and (d) and paragraphs (1), (2), and (3) of this subsection, the Secretary shall designate regional agencies or organizations ... in assigning such agencies to such designated regional agencies or organizations the Secretary shall assign a home health agency which is a subdivision of a hospital ... only if, after applying such criteria relating to administrative efficiency and effectiveness as he shall promulgate, he determines that such assignment would result in the more effective and efficient administration of this title. By not later than July 1, 1987, the Secretary shall limit the number of such regional agencies or organizations to not more than ten.
[3] The criteria were: (1) Uniform interpretation of Medicare rules; (2) Expertise in bill processing; (3) Control of administrative costs; (4) Ease of communication of program policy and issues to affected providers; (5) Ease of data collection; and (6) Ease of the Health Care Financing Administration's monitoring of intermediary performance. See 52 Fed.Reg. 2424, 2425 (Jan. 22, 1987); 53 Fed.Reg. at 17,937.
[4] We do not need to stress the issue of plaintiffs' laches, although it undercuts plaintiffs' claim of irreparable injury.
[5] Section 1395h(f) reads as follows:

In order to determine whether the Secretary should ... reassign a provider of services ..., the Secretary shall develop standards, criteria, and procedures to evaluate such agency's or organization's (1) overall performance of claims processing and other related functions required to be performed by such an agency or organization under an agreement entered into under this section, and (2) performance of such functions with respect to specific providers of services, and the Secretary shall establish standards and criteria with respect to the efficient and effective administration of this part.... Such standards and criteria shall be published in the Federal Register, and opportunity shall be provided for public comment prior to implementation....
Pertinent regulations promulgated under this section are 42 C.F.R. §§ 421.112, 421.116, 421.120, 421.122, and 421.124.
[6] We note that the parties agree § 1395h(e)(4) directed the Secretary to transfer "freestanding" HHAs to regional intermediaries without requiring him to further consider efficiency or effectiveness at all. See Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment ("Plaintiffs' Opposition") at 6; Defendants' Brief at 12.
[7] 42 U.S.C. § 1395h(e)(1) provides in pertinent part:

[T]he Secretary ... may assign or reassign any provider ... if he determines, after applying the standards, criteria, and procedures developed under subsection (f) of this section, that such assignment or reassignment would result in the more effective and efficient administration of this part. (Emphasis added).
Subsection (e)(2) provides in relevant part:
[T]he Secretary may (subject to the provisions of paragraph (4)) designate a national or regional agency ... if he determines, after applying the standards, criteria, and procedures developed under subsection (f) of this section, that the designation would result in more effective and efficient administration of this part. (Emphasis added).
[8] If plaintiffs' construction were correct, Congress' statements in § 1395h(e)(4) regarding hospital-based HHAs would be excess verbiage, merely duplicative of what subsections (e)(1) and (e)(2) already required.
[9] On the basis of government briefs filed in an earlier proceeding, plaintiffs argue that the Secretary formerly shared their view regarding the applicability of § 1395h(f) to § 1395h(e)(4). Plaintiffs' Brief at 12-13. We find this to be inapposite. Statements or briefs of agency counsel in other litigation generally are insufficient to create agency policy. See Heckler v. Chaney, 470 U.S. 821, 836 n. 5, 105 S.Ct. 1649, 1658 n. 5, 84 L.Ed.2d 714 (1985); Watkins v. Blinzinger, 789 F.2d 474, 481 (7th Cir.1986).
[10] Plaintiffs do not apparently contend that the Secretary's promulgation of the six criteria applied violated APA section 553, other than to note that the notice and comment provision of § 1395h(f) "is similar to the rulemaking requirement" of the APA. Plaintiffs' Brief at 23. In any event, we find that the Secretary's notice and publication of the proposed rule, which specifies the new criteria that the Secretary intended to apply as well as the proposed language of other regulations addressed in the notice, satisfied the notice and comment requirements of the APA. See 52 Fed.Reg. 2425, 2429.
[11] Plaintiffs argue that the Secretary changed his position or view in: (1) determining that hospital-based HHAs should cease relying on their parent hospitals' intermediaries for coverage determinations; (2) splitting the functions of coverage and reimbursement determinations between two intermediaries for each hospital-based HHA; (3) failing to use § 1395h(f) criteria in determining whether efficiency and effectiveness of program administration would be enhanced; and (4) failing to acknowledge the applicability of § 1395h(f). See Plaintiffs' Brief at 25. The former two "changes in course" by no means amount to a recision of any agency rule or regulation. Because we have found that § 1395h(f) is inapplicable to the regulations developed under § 1395h(e)(4), plaintiffs' latter two "changes in course" are without foundation.
[12] In response to its notice, the agency received 92 comments, including 76 from providers, 7 from provider associations, and 6 from intermediaries. 53 Fed.Reg. at 17,938. Additionally, as the notice of the proposed rule pointed out, 121 of the 272 comments received from an earlier related proposed rule recommended assigning hospital-based HHAs to regional intermediaries. See 52 Fed.Reg. at 2425. Plaintiffs' suggestion that the Secretary's consideration of comments received in the earlier related rulemaking was somehow unreasonable is without merit. The notice of the proposed rule expressly stated that these comments were being considered by the Secretary. Id. Interested parties were, of course, free to submit revised comments relating to the proposed rules for the transfer of hospital-based HHAs.

We note that the intervenor in this case, National Association for Home Care ("NAHC"), in fact, was among those who submitted additional comments. NAHC now presents arguments that it failed to raise in either of its prior submissions to the Secretary. Despite that some commenters may have changed their position since responding to the proposed rule in this case, we can hardly fault the Secretary for his lack of omniscience.
[13] Plaintiffs point out the increasing percentage of denied home health care claims that are reversed on reconsideration and allege that the Secretary failed to consider this important aspect of the problem. Plaintiffs' Brief at 35-38. We find that the Secretary, in fact, considered and rejected basing the decision to transfer hospital-based HHAs to regional intermediaries on denial rates because the denial rates are "subject to ambiguous interpretation," since "it is not clear to what extent low denial rates are related to good provider education rates efforts by intermediaries or overly broad interpretations of existing coverage policy." 53 Fed.Reg. at 17,940. We do not believe that the increases in denial rates undermine the Secretary's decision to regionalize hospital-based HHAs' claim processing. Although it is true that congressional concern regarding delays in claim processing and increases in denial rates has culminated in legislation designed to remedy such problems, such legislation is directed towards the problems attendant to all HHA intermediaries, not just the regional intermediaries. We conclude that it was not unreasonable for the Secretary to determine that the steps necessary to address these issues could be more easily and effectively implemented with respect to 10 rather than 53 intermediaries.
[14] Because it was congressional concern over the claims processing function which prompted enactment of § 1395h(e)(4), that is the function which the agency chose to regionalize.
[15] The Secretary also noted that although there were likely to be initial set-up expenses for some providers, the effect on agency costs would be minimal. Id. at 17,940.
[16] Regarding uniformity and consistency the notice of the final rule related:

having 10 intermediaries making such determinations is an improvement over having 53 intermediaries making coverage determinations. Furthermore, we have been working with the ten regional intermediaries to identify areas where inconsistent determinations have been made, to arrive at proper determinations, and to see that in the future the guidelines will be applied uniformly.
53 Fed.Reg. at 17,939.
[17] For the same reason, we find that the plaintiffs' argument that the Secretary failed to consider the alternative of permitting hospital-based HHAs to remain with their existing intermediaries and simply clarifying the coverage guidelines to be without merit. The benefits of regionalization, discussed in the notices of the proposed and final rules, would concomitantly arise should guideline clarifications be issued.
[18] We note that the final rule did not specify when the transfers were to actually take place. Nevertheless, the HHAs knew unequivocally as of May 19, 1988 that they were to transfer to a regional intermediary. See 53 Fed.Reg. at 17,943.